UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

     -against-

                                                                                     Ind. No. S1 16 CR 540 (JMA)

JOHN VENDITTO, et al.

                    Defendant.

-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN VENDITTO'S MOTIONS *IN LIMINE*

                                                    BRAFMAN & ASSOCIATES, P.C.
                                                    *Attorney for Defendant*
                                                    767 Third Avenue - 26th Floor
                                                    New York, New York 10017
                                                    Tel: (212) 750-7800
                                                    Fax: (212) 750-3906

MARC AGNIFILO
JOSHUA D. KIRSHNER

**MOTION IN LIMINE NO. 1:**

**MOTION TO PRECLUDE ANY EVIDENCE OR ARGRUMENT THAT THE 2010 AMENDMENT TO HARENDRA SINGH'S CONCESSION AGREEMENT WITH THE TOWN OF OYSTER BAY VIOLATED THE NEW YORK STATE CONSTITUTION**

1.   Introduction

Defendant John Venditto moves, pursuant to Federal Rules 401, 402, and 403, to preclude any evidence or argument that the June 8, 2010 Amendment (the "2010 Amendment") to the concession agreement between the Town of Oyster Bay (the "Town") and Harendra Singh's business was a "guarantee" or violative of the New York State Constitution or otherwise illegal or wrong. Conversely, Mr. Venditto requests that he be permitted to demonstrate to the jury that the May 5, 2011, November 18, 2011 and June 12, 2012 Amendments (collectively the "2011/12 Amendments") were—in stark contrast to the 2010 Amendment—direct guarantees of private debt, and, therefore, unconstitutional.

2.   Factual Background

Beginning in 2000, Singh and his companies were awarded licenses to provide food and beverages at two Town facilities, the Town's TOBAY beach ("TOBAY") and the Town's Woodlands Golf Course ("Woodlands"), in exchange for paying license fees to the Town. As part of his deal with the town, Singh also promised to make valuable capital improvements to the Town's facilities at each of the concession locations.

By end of 2008, through a series of amendments to the concession agreements, Singh had committed to making millions of dollars of capital improvements to the Woodlands and TOBAY facilities. In early 2010, Singh needed to obtain financing to provide the capital improvements to the Town's facilities lest he face default on the agreements. Singh, through his inside man, Deputy Town Attorney Fred Mei, explored whether the Town could guarantee any debt Singh

2

incurred that was used to fund capital improvements at the Town's facilities. Singh and Mei were informed, however, that no such guarantee was permissible because Article VIII, § 1 of the New York State Constitution prohibits municipalities from guaranteeing loans made to private parties.

Though the Town could not guarantee Singh's debt, there was ample reason to support Singh's efforts to obtain funding—Singh had already completed millions of dollars in capital improvements and that Town would be on the hook for in the event of a default, and, most notably, Singh's improvements and management of the food and beverage facilities at the Town's facilities were an unequivocal success for the Town and its constituents.

By the spring of 2010, working with the Town's outside counsel, Singh and Mei identified a solution. Singh had completed improvements at TOBAY totaling more than $1.7 million. The existing concession agreement provided that the Town would compensate Singh for a portion of the capital improvements already completed. Furthermore, in the event of an early termination of the concession agreement for that facility, Singh could assign the Town's payment for those improvements to its lender as security for the repayment of the loan. When one of the lenders with whom Singh and Mei had been negotiating agreed to this structure for a loan to fund improvements at TOBAY, Singh was able to close on a $1.5 million dollar loan to himself. On June 8, 2010, the Town and Singh entered into the 2010 Amendment.

Between 2011 and 2014, Singh and Mei used Singh's obligations to make capital improvements at Town facilities as a pretense for securing over $20 million in loans from various lenders, while utilizing the proceeds of those loans to line his own pockets, and bribe Mei for his role as a corrupt insider, rather than improve Town facilities. To secure the loans, Singh, Mei, and others, surreptitiously created the 2011/12 Amendments, which enabled them to misrepresent to lenders that the loans were backed by guarantees that the Town would make

3

good on the loans if Singh defaulted. Mei would craft fraudulent guarantees giving the superficial appearance of Town support by, amongst other criminal conduct, providing opinion letters on Town letterhead and procuring signatures of other Town officials though deceit. The guarantees were obviously the product of fraud as they clearly violated the New York State's Constitution express prohibition against a municipality guaranteeing the repayment of private debt.

  3.  <u>Legal Standard</u>

Under Rule 401 evidence is relevant if it has a tendency to make a fact more or less probably than it would be without the evidence and the fact is of consequence in determining the action. *See* Fed. R. Evid. 401. Under Rule 402, evidence must be relevant to be admissible. *See* Fed. R. Evid. 402. And yet, if the probative value of the evidence is outweighed by its prejudice, the relevant evidence may be excluded. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

  4.  <u>Argument</u>

The Court should preclude the Government from introducing evidence or arguing that the 2010 Amendment was unconstitutional, illegal, or wrong. Indeed, the Government's first motion *in limine* [Dkt. No. 132, footnote 3], concedes that "this trial is not about the enforceability and/or legality of the indirect loan guarantees." The Court should hold the Government to its contention. The main thrust of Government's case is that the defendants accepted bribes for official action. The jury will undoubtedly remember ***false*** allegations or insinuations that the official act was not only allegedly in exchange for things of value, but also illegal. The risk of

misleading the jury is high. So is the overwhelming prejudice to Mr. Venditto. He should not be forced to convince a jury that the 2010 Amendment was lawful when the issue is clear. This Amendment was lawful and proper under the law that controls.

Conversely, Mr. Venditto must be able to demonstrate that the unauthorized 2011/12 Amendments coupled with the unauthorized Mei opinion letters constituted municipal guarantees of private debt in violation of the New York State Constitution. The contrast between them will aid the jury in understanding that Mr. Venditto was entirely uninvolved in two rogue coconspirator's intentional conduct aimed at defrauding the unwitting Town of millions of dollars without Mr. Venditto's knowledge or participation.

## MOTION IN LIMINE NO. 2:

### MOTION TO IDENTIFY COCONSPIRATORS AND PRECLUDE INADMISSIBLE HEARSAY IN ADVANCE OF TRIAL

1. Introduction

Defendant John Venditto requests that this Court order the Government to identify all the unindicted coconspirators before trial *and* identify the coconspirator statements it may attempt to introduce at trial. Due to the volume of discovery of this matter, early identification would facilitate trial efficiency by avoiding lengthy recesses during trial. Such efficiency is vital for the sake of conscripted jurors, as well as for the expeditious conclusion of trials in busy courts where the time allotted to any one trial must perforce be limited. *See United States v. Garcia*, 406 F. Supp. 2d 304, 305-06 (S.D.N.Y. 20015) (encouraging the government's early disclosure of 3500 material for the sake of efficiency)). Identifying the statements the Government intends to use less than three weeks before trial will allow for the Court to determine whether statements are hearsay and not admissable.

5

2.      Legal Standard

Pursuant to Rule 801(d)(2)(E), a statement is not hearsay if it "is offered against an opposing party and . . . it was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). In order for such a statement to be admitted,

> the district court must find by a preponderance of the evidence (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in the furtherance of the conspiracy.

*United States v. Paredes*, 176 F.Supp.2d 183, 186 (S.D.N.Y. 2001) (citing *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)). In analyzing the three elements enumerated above, "the court may consider the hearsay statements themselves . . . 'However, these hearsay statements are presumptively unreliable, and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" *Id.* at 187 (quoting *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)).

For the first element, that there was a conspiracy, the general federal conspiracy statute "requires proof of three essential elements." *United States v. Svoboda*, 347 F.3d 471, 476 (2d Cir. 2003). That is, (1) an agreement among two or more persons, the object of which is an offense against the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged coconspirators." *Id.*

The second element, that its members include the declarant and the party against whom the statement is offered, is self-explanatory. The third element does include two distinct prongs,

6

both of which must be satisfied by a preponderance of the evidence. To satisfy the first prong, that the statement was made during the course of the conspiracy, the statement must be made while the conspiracy is ongoing. *Paredes*, *supra*, 176 F. Supp. 2d at 189. In this regard, "a statement is not made in the course of the conspiracy when it made after the main objective of the conspiracy has been accomplished," and "participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators." *Id.* at 189 (citation omitted). To satisfy the second prong, in furtherance of the conspiracy,

> the statements must in some way have been designed to promote of facilitate achievement of the goals of the conspiracy, including, providing information or reassurance to a coconspirator or seeking assistance from a coconspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the plan's goals.

*Id.* at 187 (citing *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994)). However, "[t]he Second Circuit has held . . . that neither 'idle chatter' nor 'merely narrative' descriptions by one coconspirator of the acts of another, meet the Rule 801(d)(2)(E) test." *Id.* (citing *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989)). "The principal question in the 'in furtherance' issue is whether the statement promoted, or was intended to promote, the goals of the conspiracy.'" *United States v. Saneaux*, 365 F.Supp.2d 493, 500-01 (S.D.N.Y. 2005) (quoting *Beech-Nut Nutrition Corp.*, 871 F.2d at 1199). And "[s]tatements which tend to frustrate or hinder the goals of the conspiracy, or those which cannot conceivably be interpreted to advance the accomplishment of conspiracy objectives, cannot reasonably be interpreted to further the conspiracy." *Id.* at 501.

      3.      <u>Argument</u>

Here, the Government has not informed Mr. Venditto who the unindicted coconspirators are in this case and so he is unable to preclude specific statements that the Government will seek

7

to admit. Mr. Venditto seeks to preclude the Government from introducing coconspirator statements that constitute inadmissible hearsay outside the scope of Fed. Rule 801(d)(2)(E). Until the Government identifies the alleged coconspirators and their statements, it is impossible to make more specific objections and show the Court why a particular statement constitutes hearsay. The majority of the statements likely fall under the guise of "idle chatter", not made in furtherance of the charged conspiracy, or, alternatively, are irrelevant. Accordingly, Mr. Venditto respectfully requests an Order disclosing the unindicted coconspirators and an Order precluding the Government from offering evidence of coconspirator statements constituting inadmissible hearsay. Mr. Venditto further requests an opportunity to elaborate on specific to particular statements once the statements are identified by the Government.

## MOTION IN LIMINE NO. 3:

## MOTION FOR AN OPPORTUNITY TO MAKE FURTHER MOTIONS

As this Court is aware, the volume of discovery in this case is massive. When Defendant John Venditto made his pretrial motions back in September 2017, the Government's production had totaled over 1,000,000 pages of documents. And the productions kept coming. Less than a week ago, on February 16, 2018, we received a thirteenth discovery disclosure from the Government.

Accordingly, Mr. Venditto respectfully requests an opportunity to file further motions *in limine* after the Government identifies its exhibits and 3500 material in order to challenge the admissibility of such evidence and coconspirator statements. If Mr. Venditto has specific objections to the evidence of statements the Government will seek to introduce, he will promptly notify the Government and Court and make the necessary motions so not to cause any unnecessary delay.

Respectfully submitted,

/s/
Marc Agnifilo
Of Counsel
Joshua Kirshner
Brafman & Associates, P.C.
767 Third Avenue - 26th Floor
New York, New York 10017
(212) 750-7800

cc: All counsel (via ECF)