UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

               -against-                              **ORDER**

                                                     16-CR-540 (JMA)

EDWARD MANGANO,
LINDA MANGANO, and
JOHN VENDITTO,

                                    Defendants.

------------------------------------------------------------------------X

     Defendant Venditto has requested an advice of counsel instruction.  For the reasons set forth below, that request is denied.

> A defendant is "entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense. There must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'"
>
> United States v. Scully, 877 F.3d 464, 476–77 (2d Cir. 2017)

     To the extent that defendant Venditto seeks an advice of counsel instruction concerning the various bribery charges, such a charge is clearly improper.  Whether or not the concession amendments violated New York State law is not an element of the bribery charges.  Even if the concession amendments were permissible under state law, defendant would still be guilty of bribery if there was a quid pro quo and the elements of the various bribery charges have been met.

     Defendant's arguments about advice of counsel as it relates to the securities counts that arise prior to the Town's retention of Paul Weiss and Quinn Emmanuel are equally meritless.  Critically, there is no evidence that defendant sought the advice of either Rivkin or Sinnreich

1

concerning the propriety of disclosures for bond offerings.  Moreover, throughout this trial, defense counsel has attempted to paint Rivkin Radler's advice—namely, that the concession amendments do not violate the New York State Constitution—as reasonable, correct and appropriate.  If that were the case, then Venditto would have even more reason to disclose any concession amendments because Rivkin told him that the New York State Constitution is not a bar to enforceability.

Now I am going to turn to the period beginning sometime in early 2015, when the Town retains Paul Weiss and Quinn Emmanuel.

As an initial matter, it is doubtful that there is sufficient evidence for a reasonable jury to find that defendant "in good faith and honestly followed counsel's advice."  Although Len Genova testified that the TOB followed Quinn Emmanuel's "legal guidance" there was no testimony concerning what that advice was.  In any event, even assuming that there was sufficient evidence on this element, defendant's request fails because a reasonable juror could not find that the defendant "fully and honestly laid all the facts before his counsel."

First, the TOB had bond counsel and there is no evidence that defendant fully and honestly laid the facts before bond counsel.  Bond counsel may have been particularly interested in any facts that implicated management integrity.  More importantly, though, is that a reasonable jury could not find that defendant fully and honestly laid all the facts before Quinn Emannuel.  Defendant relies on Len Genova's testimony, but Genova testified that he and Venditto were not honest with, nor did they lay out all of the facts to, Quinn Emmanuel.

The testimony from Genova cited by the government defeats defendant's request for an advice of counsel instruction.  Moreover, even beyond that testimony from Len Genova, other evidence in the record also precludes a reasonable jury from finding that defendant fully and

2

honestly laid out all of the facts to Quinn Emmanuel or even that defendant might have believed in good faith that Quinn Emmanuel had obtained all of the relevant facts from other people and sources in the Town.

It is important to stress that before the Town engaged Quinn Emmanuel, Venditto was already aware of a criminal investigation concerning Singh—at that point, subpoenas had been served and some people, such as Fred Mei, had already been interviewed by the FBI.  (See, e.g., Tr. 5808–5833, 5914.)  From that point on, it is obvious that any interaction between Singh and Town officials that had even a hint of potential impropriety would need to be disclosed to attorneys, including Quinn Emmanuel, for there to be a full and honest disclosure.  This includes complete disclosure about both the April 28 meeting and any benefits received by Venditto and other Town officials from Singh.  However, no such disclosure occurred here.

For example, there is no evidence that defendant or anyone else at the Town ever communicated what occurred at the April 28, 2010 meeting to Quinn Emmanuel.  These are critical facts.

Although Fred Mei testified that he told Quinn about the attendees of that meeting, there is no evidence that he provided Quinn with any additional information about the meeting.  (See Tr. 4309–4310.)

Len Genova's testimony is also insufficient on this point.

Q:  Do you know whether or not Mr. Venditto told Jonathan [Pickhardt] about the meeting from April 2010?

A: In any of the times I was with him, he didn't. If he did so at another point in time, no, I do not know.

(Tr. 6274.)

* ***

3

Q. Did you tell Quinn Emanuel, at any point in time, about the April 28th meeting, yes or no?

A. It's possible.

Q. That's fine. You don't have a specific recollection, but it's possible?

A. It's possible.

Q. Did you tell Quinn Emanuel at any point in time that Jonathan Sinnreich was present at the meeting?

A. That, I don't recall.

Q. Do you know if Quinn Emanuel spoke to Jonathan Sinnreich?

A. I'm sure they did.

(Tr. 6274–6275.)

Genova's statement that, at some unspecified time, it is possible that he told Quinn about the April 28 meeting is insufficient. First, the disclosure to the attorney must take place before the alleged reliance on counsel. Here, there is no evidence as to when the disclosure occurred. Moreover, the mere fact that such a disclosure might have happened is insufficient. Further, even if Genova did disclose something about the April 28 meeting, his testimony says nothing about the content of that disclosure. Finally, there is no evidence in the record about any information that Sinnreich might have relayed to Quinn Emmanuel.

Beyond the April 28 meeting, the other elephant in the room is the various benefits that Singh provided to Venditto and others in the Town government.

There is no evidence that defendant disclosed any bribes to Quinn Emmanuel. Even putting aside the question of whether these benefits constitute bribes (a point which Venditto disputes),

4

there is no evidence that defendant disclosed to Quinn any of the benefits that he and his family received such as the car rides, free meals and the use of Singh's conference room.

While defense counsel maintains that the benefits Venditto received were minor, Venditto was aware, even before hiring Quinn Emmanuel, that there was a criminal investigation concerning Singh. At that point, Venditto had to know that any benefits that he and other Town officials received from Singh were material and that he needed to disclose everything he knew about this to his attorneys. There is no evidence in the record from which a reasonable jury could conclude that he did so. For example, based on this record, a reasonable jury could not conclude that Venditto never used Singh's conference room or received free meals there.

I also note that, even assuming the car rides Venditto received did not constitute unlawful bribes, the fact that he had Singh arrange for these car rides and then Venditto allegedly paid for them in cash in various amounts is, on its face, suspicious enough that it should have been disclosed to counsel.

Finally, there is also overwhelming evidence that other people in the TOB besides Venditto himself received free meals and other perks from Singh. For example, there was testimony that Venditto himself helped arranged for Joe Mondello's discounted wedding. Based on this record, a reasonable jury could not conclude that Venditto knew nothing about any of this. Again, this is material information about the potentially corrupt relationship between Singh and TOB officials. Venditto needed to disclose all information he knew about this to his counsel, but he failed to do so.

Finally, defense counsel's suggestion that any undisclosed facts were not the type of information that a client would necessarily know to volunteer on his own rings hollow, particularly in light of the fact that Venditto was an attorney and, as Jonathan Sinnreich testified, was very

5

intelligent and sophisticated.  This is not an unsophisticated client who might not know what he should tell his lawyer.

       **SO ORDERED.**

Dated:  May 14, 2018
       Central Islip, New York

                                     /s/    (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE